UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 0:19-cv-60946-WPD
U.S. District Judge Dimitrouleas

PATRICIA KENNEDY,

      Plaintiff,

vs.

HEIDI MOTEL, INC.,

      Defendant.

_____/

**DEFENDANT'S REPLY MEMORANDUM TO
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW Defendant, HEIDI MOTEL, INC., by and through its undersigned counsel, and pursuant to Local Rule 7.1(c), hereby files its Reply Memorandum to Plaintiff's Opposition to Defendant's Motion to Dismiss [D.E. 20], and in support thereof, states as follows:

**A. Florida' Long-Arm Statute**

In Plaintiff's Opposition to Defendant's Motion to Dismiss (hereinafter referred to as "Response"), Plaintiff limits her personal jurisdiction arguments to specific personal jurisdiction and subsections (1)(a)(1), (2), and (6) of Florida's long-arm statute

For purposes of brevity, the remainder of Defendant's Reply will only address due process arguments raised in Plaintiff's Response.

**B. Due Process**

To determine the existence of personal jurisdiction, the Court should apply the three-part due process test to "examine[]: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully

availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. Luis Vuitton, 736 F.3d at 1355 (citations and internal quotations omitted). If a plaintiff establishes the first two prongs, the burden then shifts to the defendant to make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id.

### 1. Claims Arising out of Contacts with Florida

Whether Plaintiff's claims arise out of or relate to Defendant's contacts with Florida "must focus on the direct causal relationship between the defendant, the forum, and the litigation." Louis Vuitton, 736 F.3d at 1355-56. Plaintiff makes the assumption that "[b]y virtue of its online reservations system, Defendant operates, conduct, engages in and carries on business in this State, solicits in this State, and caused harm in this State." [D.E. 20 at 2]. The essence of Plaintiff's arguments is that her claims arise out of Defendant's conduct because (1) Plaintiff is a resident of Broward County, Florida, (2) Defendant's website contains a reservations system that is accessible in Florida, (3) the ability to make reservations on Defendant's website is a solicitation for business in Florida, and (4) therefore, Defendant transacts and conducts business in Florida. Defendant has filed a declaration attesting, among other things, that Defendant does not conduct business in Florida and does not market directly to Florida residents. [D.E. 14]. Other than her own conclusory allegations, Plaintiff has not put forth evidence to rebut Defendant's attestations. Florida residents may voluntarily access Defendant's website and have the option to make reservations; however, Defendant does not have any direct contacts with Florida. As such, Plaintiff has failed to establish that her claims arise out of Defendant's contacts with Florida.

**2. Purposeful Availment**

When determining whether purposeful availment occurred, courts apply the traditional minimum contacts test set forth in Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984), and have the option to also apply the "effects test" set forth in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).[1]

Under the minimum contacts test, courts ask whether the out-of-state defendant's contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Louis Vuitton, 736 F.3d at 1357 (citing SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997)). Again, in this case, Plaintiff has not put forth evidence to rebut Defendant's attestations. Plaintiff only relies on her own allegations that the Defendant's online reservations system establishes that Defendant conducts business in Florida. However, the "mere operation of an interactive website alone [does not] give[] rise to purposeful availment anywhere the website can be accessed." Id. at 1358. Plaintiff's Response cites to several cases finding out-of-state defendants subject to personal jurisdiction, at least in part, by virtue of their websites. Many of those cases involve claims of trademark infringement or defamation, and the holdings therein are based on drastically different facts than those at issue herein. Trademark infringement, defamation, and other similar claims focus on the wrongful dissemination of information. Conversely, ADA website cases focus on the lack of accessible information.

---

[1] Plaintiff's Response mentioned the "effects test" only to assert that a "defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state." [See D.E. 20 at 3]. Plaintiff provides no other information concerning the "effects test." As such, Defendant does not apply the test herein.

Many of the other cases Plaintiff relies upon involved out-of-state defendants who sold products that were ordered through their websites and then shipped to the plaintiff in the forum state. In those cases, there was a clear exchange of goods or services for money. For example, Plaintiff relies upon South Dakota v. Wayfair, Inc., 138 S. Ct. 2080 (2018) for the proposition that the ability to make reservations on Defendant's constitutes a "purposeful availment." The question at issue in Wayfair was whether a state may obligate online sellers with no physical presence within its borders to collect tax on the sale of products bought out of state and brought into state when shipped to buyers. Wayfair, 138 S. Ct. at 2087. Here, Defendant's website is not alleged to sell products that enter the State of Florida. The purpose of Court's discussion in Wayfair regarding a business's physical presence was to explain why the physical presence rule was outdated for purposes of the Commerce Clause and rejected for the purposes of due process. See Id. at 1292-96. The holdings in Wayfair do not extend to a business or website that does not sell products that are then sent into another state.

Plaintiff relies upon few ADA website cases, which are all distinguishable here. For example, in Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 294 (D. Mass. 2017), the ADA website discrimination claim was alleged against a defendant that sold products on its website, and had minimum contacts with the forum as approximately $20 million worth of products were shipped into the forum state. Similarly, in Access Now, Inc. v. Sportswear, Inc., 298 F. Supp. 3d 296, 302 (D. Mass. 2018), personal jurisdiction over the out-of-state defendant was found constitutional as the defendant sold products that crossed over into the forum's borders. In Carroll v. FedFinancial Fed. Credit Union, 324 F. Supp. 3d 658, 663 (E.D. Va. 2018), personal jurisdiction was found because the out-of-state defendant credit union had several customers in the forum state, which established minimum contacts.

4

Regarding the "sliding scale" analysis set out in <u>Zippo Mfg. C. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the Response briefly mentions, the Court should consider the more recent case of <u>Pascarelli v. Koehler</u>, 346 Ga. App. 591, 816 S.E.2d 723 (2018), which is almost directly on point with the facts at issue in the case herein. In <u>Pascarelli</u>, the Georgia Court of Appeals considered personal jurisdiction in terms of a defendant hotel's website. <u>See</u> <u>Id.</u> Using the "sliding scale," the court held that the defendant hotel's website was not completely passive as it did not simply share information, nor did its online reservation system also did not transform the website into an extensively interactive website completely interactive. <u>Pascarelli</u>, 346 Ga. App. 596. As such, an examination of "the level of interactivity and commercial nature of the exchange of information that occurs on the [website]" was required. <u>Id.</u> (quoting <u>Aero Toy Store, LLC v. Grieves</u>, 279 Ga. App. 515, 631 S.E.2d 734, 740 (2006)). The court ultimately found that "an Internet 'presence' with online reservation capability does not satisfy the minimum contacts requirements." <u>Id.</u> at 597. In making such a finding, the court reasoned that the facts applicable to the defendant hotel's website at issue were different from most cases where goods could be ordered through a nonresident defendants website because:

> in those Internet cases, the resident can bring about the transmission of the goods into the forum state through the order alone. A hotel website allows an online reservation to be made, but this is preliminary to the individual traveling outside the forum state to use the service provided by the hotel. The purpose of the former is fulfilled when the goods reach their destination in the forum state while the purpose of the latter is fulfilled once the resident reaches the hotel outside the forum state.

<u>Pascarelli</u>, 816 S.E.2d at 727 (citation omitted). Plaintiff's Response does not address where Defendant's website may fall on the sliding scale. Plaintiff only alleges in conclusory fashion that Defendant's online reservations system "actively markets to Florida residents, solicits their business and transacts business with them in Florida by taking their payment." [D.E. 20 at 3-4]. Here, like in <u>Pascarelli</u>, the reservations system on Defendant's website is the <u>only</u> aspect of

Defendant's business transactions alleged to reach Florida residents. There is no evidence that Defendant did anything in Florida aside from operating a website that is generally accessible anywhere. Without more, the operation of a website accessible in Florida, and everywhere else, cannot alone establish direct causal relationship between the Defendant, the State of Florida, and the Plaintiff.

### 3.  Fair Play and Substantial Justice

Finally, the Court should determine whether exercising personal jurisdiction over Defendant satisfies traditional notions of fair play and substantial justice. Relevant factors include "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." Louis Vuitton, 736 F.3d at 1358 (citation omitted).

Here, fair play and substantial justice warrants dismissal of Plaintiff's Complaint. Plaintiff has failed to meet her burden to establish that Defendant's conduct through its website was expressly aimed at her, a Florida resident. Additionally, the Supreme Court has held that the primary concern in assessing personal jurisdiction under the prong of "traditional notions of fair play and substantial justice" is the burden on the defendant. Bristol-Myers Squibb Co. v. Superior Court of Cal., 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017); see also Flatirons Bank v. Alan W. Steinberg Ltd. P'ship, 233 So. 3d 1207, 1211 n.7 (Fla. 3d DCA 2017) (citing Bristol Meyers in recognizing the "recent trend" in the Supreme Court's jurisprudence on specific jurisdiction "to limit the reach of a court over a defendant where the activity has minimal affiliation with or connection to the forum state"). Here, the Defendant has attested to the many ways it lacks contact with Florida. Defendant is a small business located in Helen, Georgia, almost 800 miles away from this Court's boundaries. Plaintiff has not proffered any evidence to the contrary. If the Court asserts

personal jurisdiction over Defendant herein, Defendant would be required to incur the cost of traveling between Helen, Georgia and Fort Lauderdale, Florida to defendant itself in this action. The burden upon Defendant should outweigh the forums interest in adjudicating this dispute. Additionally, when considering her "tester" status and the number of lawsuits Plaintiff files each year, the burden upon Defendant significantly outweighs the Plaintiff's interests in obtaining effective relief.

### C. Conclusion

Based upon the foregoing, Defendant, HEIDI MOTEL, INC., respectfully requests this Court dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1), (2), (3), (6) and/or (7) and 28 U.S.C. § 1406. In the alternative, Defendant, HEIDI MOTEL, INC., respectfully requests this Court stay the proceedings herein pending the Eleventh Circuit Court of Appeals' decision in Winn-Dixie Stores, Inc. v. Gil.

Respectfully submitted,

*/s/ Candace W. Padgett* _
CANDACE W. PADGETT
Florida Bar No. 88763
cpadgett@boydjen.com
Boyd & Jenerette, P.A.
201 N. Hogan St., Suite 400
Jacksonville, FL 32202
(904) 353-6241
(904) 493-5658 (fax)

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some

7

other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Bridget Lynn Fields, Esquire
Thomas B. Bacon, P.A.
322 East Central Boulevard, #605
Orlando, Florida 32801
(407) 506-7163
Bridget.Fields11@gmail.com

Thomas B. Bacon, Esquire
Thomas B. Bacon, P.A.
644 N. McDonald Street
Mt. Dora, Florida 32757
(954) 478-7811
tbb@thomasbacon.law.com

By: _/s/ Candace W. Padgett_____
CANDACE W. PADGETT
Florida Bar No: 88763